IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

DANIEL E.,

                           Plaintiff,

            v.                                    Civil Action No.
                                                  6:20-CV-1270 (DEP)

KILOLO KIJAKAZI,[1] Acting Commissioner of
the Social Security Administration,

                           Defendant.

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OFFICE OF PETER M. HOBAICA           B. BROOKS BENSON, ESQ.
2045 Genesee Street
Utica, NY 13501

FOR DEFENDANT

SOCIAL SECURITY ADMIN.               CHRISTOPHER LEWIS POTTER, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

---

[1]     Plaintiff's complaint named Andrew M. Saul, in his official capacity as the
Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi
took office as the Acting Social Security Commissioner. She has therefore been
substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the
Federal Rules of Civil Procedure, and no further action is required in order to effectuate
this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[2]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that he was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which he has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in September of 1985, and is currently thirty-six years of age.  He was twenty-nine years old on his alleged onset date of July 1, 2015, and thirty-two years old at the time of his application for benefits in September of 2017.  Plaintiff stands five-feet and ten inches in height, and weighed between approximately two hundred and twelve and two hundred and sixty-seven pounds during the relevant time period.

---

[2]     This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff currently lives in an apartment in Utica, New York with his girlfriend.

In terms of education, plaintiff graduated from high school and tried college, but states that it "just didn't work out."  Plaintiff last worked for a short time as a sales associate for American Freight Company.  He has also worked many other jobs in the past, although his employment in those positions did not last for a long period of time because of his mental impairments.

Mentally, plaintiff alleges that he suffers from bipolar disorder, depression, and anxiety.  He has received mental health treatment consisting of medication and therapy, as well as a period of involuntary inpatient care at the Central New York Psychiatric Center ("CNYPC") from September to December of 2016, after he was declared mentally unfit to stand trial on pending criminal charges.  In addition to the inpatient care at the CNYPC, plaintiff treated for his mental impairments during the relevant period with St. Elizabeth Medical Center for emergency psychiatric care, and has received routine mental health care at the facility's Family Medicine Center, Upstate Cerebral Palsy Center, and New Hartford Psychiatric.

Plaintiff reports that he has suffered from mental illness as long as he can remember.  He currently takes medications for his impairments and

feels that they sometimes help, but not always, and notes that they cause side effects including dizziness, grogginess, and irritability. Plaintiff's mania has been under better control with his medication, although his depression and anxiety have gotten worse. His girlfriend does most of the chores because he has difficulty remembering to do them and is deterred by "the physical task of doing them." Plaintiff spends most of the day in bed or sleeping. He has difficulties with stress, deadlines, and paying attention or staying on task, and claims that he would not deal well with having a boss who tells him what to do.

II.     PROCEDURAL HISTORY

        A.     Proceedings Before the Agency

        Plaintiff applied for DIB and SSI payments under Title II and Title XVI of the Social Security Act, respectively, on September 27, 2017. In support of those applications, he alleged a disability onset date of July 1, 2015,[3] and claimed to be disabled based on bipolar disorder, manic depression, and anxiety.

        A hearing was conducted by video on September 16, 2019, by ALJ Jeremy G. Eldred, to address plaintiff's applications. ALJ Eldred issued an unfavorable decision on October 8, 2019. That opinion became a final

---

[3]     Plaintiff was insured for benefits under Title II until December 31, 2016.

determination of the agency on August 10, 2020, when the Social Security

Appeals Council ("Appeals Council") denied plaintiff's request for review of

the ALJ's decision.

B.     The ALJ's Decision

In his decision, ALJ Eldred applied the familiar, five-step sequential

test for determining disability.  At step one, he found that plaintiff had not

engaged in substantial gainful activity during the relevant period.

Proceeding to step two, ALJ Eldred found that plaintiff suffers from a

severe impairment that imposes more than minimal limitations on his ability

to perform basic work functions, namely bipolar disorder.  The ALJ noted

that his consideration of the effects caused by plaintiff's bipolar disorder

encompasses all of plaintiff's alleged mental symptoms.  He also

acknowledged that plaintiff is obese, but found that there was no evidence

in the record that his obesity imposes any functional limitations.  Noting that

plaintiff does not claim to experience any physical limitations, the ALJ

concluded that plaintiff's obesity is therefore not a severe impairment.

At step three, ALJ Eldred examined the governing regulations of the

Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of those listed

5

conditions.  Although the ALJ did not state which listings he specifically examined, he documented his consideration of, and findings related to, the "C criteria" and "B criteria" for the appropriate mental listings and found that plaintiff did not meet those criteria in that he had no more than moderate limitations in any of the four relevant areas of functioning.[4]

ALJ Eldred next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following limitations:

> he can perform only simple and routine tasks, can make only simple work-related decisions, can interact no more than occasionally with supervisors, co-workers, or the public, and can appropriately deal with ordinary changes in a simple unskilled occupation.

At step four, ALJ Eldred concluded that plaintiff is unable to perform any of his past relevant work.  To address step five of the sequential evaluation, the ALJ elicited the testimony of a vocational expert regarding how plaintiff's limitations would impact the occupations that he can perform, and concluded, based on the vocational expert's testimony, that plaintiff remains able to perform available work in the national economy, citing as

---

[4]    Bipolar disorder is most appropriately analyzed under Listing 12.04, which is entitled, "[d]epressive, bipolar and related disorders."  20 C.F.R. 404, Subpt. P, App. 1.

representative positions photocopy machine operator, marker, and router. Based upon these findings, ALJ Eldred concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on October 14, 2020.[5]  In support of his challenge to the ALJ's determination, plaintiff raises several arguments, most of which center upon the consultative reports of examining psychologist David Stang, Psy.D., contending that (1) the ALJ erred in rejecting the opinion from examining physician Dr. Stang by failing to provide sufficient reasons supported by the evidence and failing to appropriately analyze and explain his rejection of the opined limitations; (2) the ALJ failed to discuss or analyze plaintiff's negative reaction to stress and how it would affect his ability to work; (3) the ALJ erred in relying instead on the opinion of examining physician Dr. Sara Long because she did not consider plaintiff's bipolar disorder or other mental health diagnoses; (4) the ALJ erred in relying also on the opinions from the non-examining state agency medical consultants because they did not examine

---

[5]     This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

plaintiff; and (5) the ALJ failed to properly assess plaintiff's testimony from the hearing.  Dkt. No. 15.

Oral argument was conducted in this matter, by telephone, on February 24, 2022, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing

court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any

9

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the

second step involves an examination of whether the claimant has a severe

impairment or combination of impairments that significantly restricts his or

her physical or mental ability to perform basic work activities.  *Id.* §§

404.1520(c), 416.920(c).  If the claimant is found to suffer from such an

impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

      1.    The ALJ's Assessment of the Opinion Evidence

Because plaintiff's application for benefits was filed in September of 2017, the amended regulations regarding the weighing of medical source opinion evidence, which apply to applications filed on or after March 23 of that year, apply to his claim.  Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but will rather consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").

An ALJ must articulate in his or her determination how persuasive he or she finds all of the medical opinions and explain how he or she

considered the supportability[6] and consistency[7] of those opinions.  20

C.F.R. § 416.920c(b).   The ALJ also may – but is not required to – explain

how he or she considered the other relevant enumerated factors related to

the source's relationship with the claimant, including the length of any

treatment relationship, the frequency of examinations by the source and the

purpose and extent of the treatment relationship, whether the source had

an examining relationship with the claimant, whether the source specializes

in an area of care, and any other factors that are relevant to the

persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

a.   Dr. David Stang

The majority of plaintiff's arguments revolve around the ALJ's

perceived errors when evaluating the opinions contained within a report

and accompanying questionnaire authored by examining psychologist Dr.

David Stang.  Dr. Stang examined plaintiff on two occasions: initially, to

assess plaintiff's competency to stand trial in 2016, and later, to evaluate

---

[6]    On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[7]    On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

plaintiff's functioning in relation to his application for benefits in September 2019.  Administrative Transcript ("AT") at 483-98, 499-501.[8]  In his 2019 questionnaire response, Dr. Stang stated that plaintiff exhibits signs and symptoms such as depressed mood, diminished interest in activities, restlessness, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, panic attacks, disproportionate fear or anxiety, detachment from social relationships, distrust and suspiciousness of others, and appetite disturbance with weight gain.  AT 493.  Dr. Stang opined that plaintiff has "no useful ability to function"[9] in his abilities to complete a normal workday or workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; deal with normal work stress; understand, remember, and carry out detailed instructions; and use public transportation.  AT 494-95.  He opined that plaintiff is "unable to meet competitive standards"[10] in his abilities to maintain attention for two-hour segments; maintain regular attendance and

---

[8]      The Administrative Transcript is found at Dkt. No. 12, and will be cited as "AT __."

[9]      "No useful ability to function" is defined in the form as "an extreme limitation, mean[ing] your patient cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting."  AT 494.

[10]     "Unable to meet competitive standards" is defined in the form as "your patient has noticeable difficulty (e.g., distracted from job activity) from 16 to 25 percent of the workday or work week."  AT 494.

be punctual within customary tolerances; sustain an ordinary routine without special supervision; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them of exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with stress in semiskilled or skilled work; and travel in an unfamiliar place. *Id.* Dr. Stang additionally opined that plaintiff is "seriously limited"[11] in his abilities to work in coordination with or proximity to others without being unduly distracted; set realistic goals or plans independently of others; interact appropriately with the general public; and maintain socially appropriate behavior, and that he is "limited but satisfactory"[12] in his abilities to remember work-like procedures; understand, remember, and carry out very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; and adhere to basic standards of neatness and cleanliness. *Id.* Dr. Stang explained that these deficits were caused by plaintiff's "severe depression" and "generalized anxiety," as well as his "agoraphobic tendencies." *Id.*

---

[11]     "Seriously limited" is defined in the form as "your patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 15 percent of the workday or work week." AT 494.

[12]     "Limited but satisfactory" is defined in the form as "your patient has noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or workweek." AT 494.

In terms of whether plaintiff meets or equals a listed, presumptively disabling impairment – which plaintiff argues is the case – Dr. Stang opined with regard to the "B criteria" that plaintiff has extreme[13] limitations in his ability to adapt and manage himself in the workplace; marked[14] limitations in his ability to apply information, interact with others, concentrate, persist, and maintain pace; and moderate[15] limitations in his ability to understand and remember information.  AT 496.  Dr. Stang also opined that plaintiff meets all of the "C criteria" for the mental listings.  AT 496-97.

Dr. Stang further opined that plaintiff would be absent from work more than four days per month on average due to his impairments, would require unscheduled breaks at least every two hours for twenty minutes because of his "high level of anxiety and depression," and would be off-task twenty-five percent or more of the workday.  AT 497.

The ALJ found Dr. Stang's opinion to be unpersuasive because it (1) relies heavily on plaintiff's "own unconfirmed statements about his mental limitations," (2) relies in large part also on his examination of plaintiff

---

[13]     "Extreme" is defined in the form as "not able to function independently, appropriately, effectively, and on a sustained basis, but does not mean a total loss of ability to function."  AT 495.

[14]     "Marked" is defined in the form as "the ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited."  AT 495.

[15]     "Moderate" is defined by the form as "the ability to function independently, appropriately, effectively, and on a sustained basis is fair."  AT 495.

conducted in August 2016, at a time when plaintiff was not taking

medications and was "flagrantly psychotic," (3) does not appear to account

for more recent mental health treatment records showing vast improvement

in plaintiff's mental health when he adheres to his medications and,

accordingly is not consistent with the other evidence in the record, and (4)

is not consistent with the results of his own examination from 2019.[16]  AT

21.

Plaintiff first argues that the ALJ failed to analyze the allegedly

disabling limitations opined by Dr. Stang and never explained why those

limitations were rejected.  Dkt. No. 15, at 17-18.  Plaintiff's argument is

squarely contradicted by face of the ALJ's decision.  While in his decision

the ALJ did not recite every limitation opined in Dr. Stang's opinion, he was

not required to do so in order to show that every limitation was considered.

*See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)

(acknowledging that "an ALJ is not required to discuss every piece of

evidence submitted").  It is clear that the ALJ considered Dr. Stang's

opinion in its entirety, and that he provided multiple specific reasons why he

found that opinion was not persuasive.  Plaintiff's first argument is therefore

---

[16]     The ALJ also noted that the examination by Dr. Stang was conducted upon a
referral by plaintiff's counsel, a fact that counsel failed to timely disclose to the ALJ as
required by the Agency's rules of conduct for representatives.  AT 21.

entirely without merit.[17]

Plaintiff next argues that the reasons the ALJ provided for rejecting

Dr. Stang's opinion are not supported by substantial evidence, contending

that (1) the fact that Dr. Stang relied on plaintiff's reports about his mental

symptoms is not a valid basis for rejecting his opinion because mental

health impairments are not conducive to objective signs and symptoms, (2)

the ALJ was wrong in finding that Dr. Stang based his opinion on the 2016

examination and did not acknowledge more recent mental treatment

because Dr. Stang cited to other treatment in his report, and (3) the ALJ

erred in finding that Dr. Stang's opinion was not consistent with his own

examination because, in so finding, the ALJ inappropriately selectively

relied upon treatment evidence supporting his decision and ignored

notations of greater limitations found in Dr. Stang's examination report.

Dkt. No. 15, at 21-24.

---

[17]     Plaintiff also maintains, as part of his argument related to Dr. Stang's opinion, that the ALJ "failed to discuss Plaintiff's negative reaction to stress and how it affects his ability to work." Dkt. No. 15, at 19.  However, this argument is based on a portion of Dr. Stang's opinion in which he opined that plaintiff would find certain aspects of work stressful.  Given that, as is discussed in this decision, the ALJ's finding that Dr. Stang's opinion was not persuasive is supported by substantial evidence, the ALJ's failure to specifically discuss the stress portion of Dr. Stang's opinion is not error and does not reflect that the ALJ failed to consider that portion of his opinion.  Of note, plaintiff does not point to any medical evidence, other than Dr. Stang's opinion, that would support the need for the ALJ to make any further or more specific findings related to plaintiff's ability to cope with stress.

18

Although plaintiff is correct that mental impairments are not often conducive to being supported by extensive objective observations, that fact alone does not obligate an ALJ to accept a plaintiff's subjective reports regarding his mental symptoms and limitations without scrutiny. Rather, the ALJ must, as he or she should do in any case, assess whether the claimant's subjective reports of symptoms are consistent with the available evidence by considering the relevant regulatory factors.[18]

Plaintiff fails to cite any case law that supports his assertion that the ALJ should have credited his reports of his subjective symptoms merely because his impairment is mental. Moreover, the record supports the ALJ's finding that, with the exception of the period from June to December 2016 when plaintiff experienced a severe exacerbation of his mental health symptoms that led to him being admitted to inpatient care, records of his treatment consistently show that he was doing much better while on his medications aside from some occasional reports of low motivation or difficulty sleeping related to temporary medication changes. *See, e.g.*, AT 19-20, 316, 321, 329, 332, 335, 362, 371, 402, 407, 409, 412, 480, 505. The ALJ acknowledged that plaintiff experienced some decline in his

---

[18]   A more detailed discussion of these factors and plaintiff's broad assertion that the ALJ erred when assessing his subjective reports will be included in a later section of this decision.

mental health in mid-2018, but noted that the decline was due to plaintiff's stopping his medication.  AT 20.  By 2018, plaintiff was receiving mental health care approximately once every three months, and was reporting by the end of 2018 that his mood was stable when adhering to his medications.  *See, e.g.*, AT 394, 402, 407, 409, 412, 480.  The ALJ therefore did not "cherry-pick" the record when discussing plaintiff's treatment and did not merely dismiss Dr. Stang's opinion out-of-hand based on a lack of objective corroboration, but rather relied upon the fact that even plaintiff's own reports to providers throughout 2017, 2018, and 2019 do not support the level of limitations opined by Dr. Stang.

Plaintiff's citation to *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7 (2d Cir. 2020) is inapposite.  Although the Second Circuit did observe in *Stacey* that cases involving mental health "tend to be less susceptible to objective testing and assessment," it found remand warranted in that case based on multiple factors that are not present in this case.  One distinguishing factor is that, in this case, Dr. Stang is not a treating physician, and did not establish his opinion based on "first-hand observations of [plaintiff's] behavior and affect over the course of dozens of meetings spanning several years" and, in any event, unlike *Stacey*, this case is not subject to the treating physician rule, the ALJ here did not

commit the oversights or simplifications of the evidence that the ALJ in *Stacey* did, and contrary to plaintiff's assertions, the ALJ here did not "cherry-pick" evidence while ignoring other objective evidence of limitations. *Contrast Stacey*, 499 F. App'x at 9-10.

Plaintiff next argues that the ALJ misrepresented Dr. Stang's report when concluding that Dr. Stang did not consider any of plaintiff's more recent treatment evidence. On the contrary, the ALJ is correct that Dr. Stang does not appear to acknowledge any treatment evidence after plaintiff's release from the CNYPC in December 2016. AT 487-90.

More relevant than whether Dr. Stang considered certain evidence is the fact that the ALJ also found that his opinion was not consistent with the treatment evidence as a whole, whether Dr. Stang had considered that evidence or not. As was discussed above, the treatment evidence overall shows that plaintiff's mental impairments were generally stable when he was taking medication, with a few periods of temporary decline in his mood while providers were trialing medications and at other times when plaintiff stopped taking medications. Plaintiff does not appear to offer any specific challenge to the ALJ's conclusion that Dr. Stang's opinion was not consistent with the evidence overall beyond the question of what evidence was considered by him.

I also find that the ALJ's assessment that Dr. Stang appeared to rely heavily on his 2016 examination of plaintiff to be reasonable and a valid basis for finding Dr. Stang's opinion unpersuasive.  As was already discussed, the record is clear that plaintiff's mental health vastly improved after 2016, and that Dr. Stang's observations of plaintiff during his acute psychiatric exacerbation were not representative of plaintiff's typical functioning while on medications.  As the ALJ found, Dr. Stang's 2019 examination simply does not reveal a level of functioning that is consistent with the limitations he opines.  In the "Behavioral Observations" section of his 2019 report, Dr. Stang observes that plaintiff "immediately exhibited a pleasant demeanor and was quite friendly," his thought processes were organized and goal directed, his affect was mildly restricted but he could laugh softly, and he described himself as "a little anxious and self-conscious" and embarrassed about his behavior during the 2016 examination.  AT 490.  On testing, plaintiff was able to perform serial three exercises without difficulty, had no deficits in performing the digit forward exercise, although he had "severe" deficits in the digit backwards exercise, was unable to recall any of three words after a five-minute interval, displayed significant long-term memory deficits when asked to recall his employment history, and was estimated to be in the low average range of

intelligence.  These observed limitations do not seem to correspond to the significant extent of limitations Dr. Stang ultimately opined.  Dr. Stang devoted multiple pages of his report to reciting plaintiff's medical history up to his release from the CNYPC, including noting his own mental status evaluation and conclusions from the 2016 examination.  Given that Dr. Stang's opinion is more consistent with his 2016 examination than his 2019 examination, I find it was not an unreasonable conclusion for the ALJ to draw that Dr. Stang relied to some extent on his 2016 examination when rendering his opinion.

Plaintiff additionally argues that the ALJ inappropriately relied upon only selected portions of Dr. Stang's 2019 examination that show little limitation.  In his decision, however, ALJ Eldred acknowledged that Dr. Stang's examination revealed memory deficits.  AT 21.  Plaintiff fails to explain how Dr. Stang's notations of memory deficits, difficulty performing a digit backwards exercise, and low average intelligence support the extensive limitations Dr. Stang opined.  Notably, in terms of ability to remember work-like procedures and very short and simple instructions – limitations that are directly related to memory – Dr. Stang opined that plaintiff is "limited by satisfactory" in those abilities.  Therefore, the limitations that are most relevant to Dr. Stang's objective findings do not

even necessarily contradict the ALJ's RFC finding of plaintiff's ability to perform unskilled work with simple routine tasks and simple work-related decisions.  AT 494.

Plaintiff also argues that the ALJ erred in failing to properly explain why he rejected Dr. Stang's opinion that plaintiff meets the listing criteria. Dkt. No. 15, at 24-27.  I reject this argument for the same reasons that were already discussed above.  The ALJ both appropriately explained the reasons he found Dr. Stang's opinion as a whole to be unpersuasive and provided an explanation for his finding that plaintiff does not meet or equal either the "B criteria" or "C criteria" related to the relevant mental Listings. Nothing further was required of the ALJ.  The fact that the ALJ did not specifically discuss Dr. Stang's opinion when analyzing those criteria does not mean that he failed to consider it, and it is clear that the same rationale the ALJ provided for finding the functional portions of Dr. Stang's opinion unpersuasive would also apply to the Listing portion of Dr. Stang's opinion. *See Columbel v. Comm'r of Soc. Sec.*, 16-CV-0773, 2017 WL 3175599, at *8 (N.D.N.Y. July 26, 2017) (Hummel, M.J.) ("Because it can be reasonably inferred that the ALJ would have weighed or intended to weigh the Listing-specific opinion the same way she weighed the more specific functional opinion contained in the same exhibit based on the reasons she provided,

any error in failing to explicitly discuss the Listing opinion is at most

harmless error.")  Despite plaintiff's argument, the mere fact that Dr. Stang

opined that plaintiff meets the criteria of the mental Listings does not

obligate an ALJ to find that the plaintiff meets a Listing.  The ALJ both

provided a detailed explanation regarding why he found plaintiff did not

meet or equal a mental listing and appropriately explained his reasons for

not relying on Dr. Stang's opinion in general.  The fact that he did not

specifically say that he was rejecting the portion of Dr. Stang's opinion

regarding the "B criteria" and "C criteria" is not a basis for finding error

because it is clear the ALJ did reject that portion of that opinion for the

reasons he otherwise provided.

For all of the above reasons, I find that plaintiff's arguments regarding

the ALJ's finding as to Dr. Stang's opinion should be rejected.

b.    Dr. Sara Long[19]

Plaintiff next argues that the ALJ erred in relying on the opinion from

---

[19]    As a general matter, plaintiff supplements his argument regarding Dr. Long and
Dr. Chapman by citing case law indicating that opinions by examining and non-
examining sources cannot generally override opinions from treating physicians.  Dkt.
No. 15, at 27.  This argument has no bearing on the case at hand, because there is no
opinion from a treating physician to which the opinions of Dr. Long and Dr. Chapman
are being compared, only the opinion of examining physician Dr. Stang, and, in any
event, those cases are based on the previous regulations regarding the weighing of
opinion evidence, which do not apply in this case due to the filing date of plaintiff's
application.

consultative examiner Dr. Sara Long because Dr. Long based her opinion on a diagnosis of "history of drug abuse" and did not acknowledge plaintiff's anxiety, depression, and bipolar disorder.  Dkt. No. 15, at 27-28.

In her report, Dr. Long noted that plaintiff reported two previous psychiatric hospitalizations as well as outpatient treatment since 2012.  AT 352.  She observed that he was well groomed with normal posture and motor behavior, coherent and goal directed thought processes, a full range of appropriate affect, euthymic mood, clear sensorium, intact orientation, and intact attention and concentration, although he was able to recall only one of three objects after five minutes and could complete only three digits backwards.  AT 353.  Dr. Long estimated that plaintiff has an average level of intelligence with poor-to-fair insight and judgment.  *Id.*  She noted that he reported he is able to take care of his own grooming, but he finds that cooking, cleaning and laundry are "too hard," he cannot shop due to anxiety, he does not socialize due to trust issues and not liking to do things, his family relationships are good, and his hobbies include watching television and going on the computer.  AT 354.  Dr. Long opined that plaintiff has no limitation in performing simple and complex tasks or making appropriate decisions in context, has the ability to maintain attention, concentration and a regular schedule, has mild limitations in his ability to

regulate emotions, and appears able to control his behavior, maintain
personal hygiene, and be aware of appropriate precautions. *Id.*

The ALJ found that Dr. Long's opinion was persuasive because it is
"well supported by the detailed findings from her mental status
examination," noting that those findings were "normal for the most part,"
and because it is consistent with the record as a whole, including the
evidence that shows that plaintiff was mentally stable when adhering to his
medications. AT 20-21.

Although plaintiff is correct that Dr. Long did not appear to be aware
of plaintiff's various diagnoses for depression, anxiety, and bipolar disorder,
that fact is not necessarily fatal, nor does it automatically render her opinion
useless or unreliable. Of note, although Dr. Long did not acknowledge any
such diagnoses, the ALJ clearly did, and did not use Dr. Long's opinion to
call those diagnoses into question. Regardless of what diagnosis Dr. Long
found, she conducted a mental status examination of plaintiff during which
she observed few abnormalities, and the results of that examination formed
the basis for her opinion. The ALJ found that her opinion was supported by
that examination, and I cannot say that the ALJ's assessment in the
respect was unreasonable. Additionally, the ALJ found that Dr. Long's
opinion was consistent with the overall record, which, as was already

discussed above, shows very little objective abnormalities and that plaintiff generally has a stable mood when adhering to his medications.  Because there is no indication that Dr. Long would have conducted her examination any differently, or that the results of her examination or opinion would have been different, had she considered plaintiff's mental health diagnoses, I find that this does not provide a basis for concluding that the ALJ's reliance on this opinion was error.  Simply stated, plaintiff offers no persuasive evidence that the diagnosis identified by Dr. Long calls into question her assessment of limitations based on what she observed on her examination. Rather, the ALJ conducted the appropriate analysis as to whether her opinion was consistent with her own findings and supported by the record as a whole, and I find no error in the resulting determination.

c.   <u>Dr. A. Chapman</u>

Plaintiff further argues that the ALJ erred in relying on the opinion from non-examining consultative doctor of psychology Dr. Chapman because, although he acknowledged plaintiff's mental health diagnoses and assessed some of the evidence, his opinion that plaintiff retains the capacity to perform the basic mental demands of unskilled work is "purely conclusory" and is not "based on any knowledge of Plaintiff or his functional limitations and mental impairments" and does not account for the findings

28

on Dr. Stang's examination.  Dkt. No. 15, at 28-29.

In his opinion, after reviewing the evidence provided to him from 2016 and 2017, Dr. Chapman found that plaintiff experiences some moderate limitations in various specific functional abilities,[20] but that he overall retains the capacity to perform the basic mental demands of unskilled work.  AT 91-94.  The ALJ found that Dr. Chapman's opinion was persuasive because it was supported by a detailed narrative rationale that cited evidence from the record, and was consistent with the record as a whole, including the evidence showing that claimant's mental impairments were stable with medication.  AT 20-21.

Plaintiff's argument fails to address the fact that the ALJ found this opinion was both supported by Dr. Chapman's assessment of the evidence and consistent with the evidence in the record as a whole.  Contrary to plaintiff's assertion, Dr. Chapman reviewed the evidence that was available at the time and rendered his opinion based on that evidence.  The fact that he did not have the opportunity to review Dr. Stang's assessment does not

---

[20]     At oral argument, plaintiff argued that this finding of moderate limitations would be consistent with a need to be off-task twenty percent of the workday, and therefore the ALJ erred in failing to reconcile adopting Dr. Chapman's opinion with the moderate limitations.  However, I note that "the Second Circuit has found that moderate limitations in mental functioning are not inconsistent with an RFC for unskilled work."  *Lee W. v. Comm'r of Soc. Sec.*, 20-CV-0008, 2021 WL 1600294, at *6 (W.D.N.Y. Apr. 23, 2021) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)).

render his opinion unreliable because, as was already discussed, Dr. Stang's actual examination of plaintiff revealed little in terms of objective evidence that was inconsistent with either Dr. Chapman's opinion or the RFC finding.  Because the ALJ reasonably found that Dr. Chapman's opinion was supported by his own review of the record and consistent with the record as a whole, the ALJ did not err in finding this opinion persuasive.

In sum, I find that the ALJ properly considered and explained the factors of supportability and consistency related to the medical opinion evidence in this case, and his findings are supported by substantial evidence.  It is a function of the ALJ in the first instance, rather than of this court, to evaluate medical opinions and determine how persuasive they are, and, in this case, where, again, the ALJ showed he conducted a proper analysis, it cannot be said that a reasonable factfinder would have to weigh the opinions differently than did ALJ Eldred.  *Brault*, 683 F.3d at 448.  Finally, it is well-established that it is a plaintiff's burden to show that the ALJ committed legal error or failed to support his or her findings with substantial evidence, a burden that plaintiff simply has not met in this case.  *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 650 (W.D.N.Y. 2020) ("It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.") (citing *Smith v. Berryhill*, 740 F. App'x

721, 726 (2d Cir. 2018)).  For all of these reasons, I find that plaintiff's

arguments on this issue must be rejected.

### 2.    The Evaluation of Plaintiff's Subjective Complaints

Plaintiff lastly argues, in generic fashion, that the ALJ failed to

perform the required analysis when assessing his subjective reports in his

hearing testimony, contending that "the ALJ failed to discuss numerous

statements of Plaintiff and the witness in the hearing testimony (see

discussion above) as to his mental limitations."  Dkt. No. 15, at 29.  Plaintiff

does not specify what statements he alleges were overlooked by the ALJ.

Nor does his citation to previous discussion in his brief provide any helpful

illumination.  Plaintiff recounts the details of his own and his girlfriend's

testimony from the hearing over the course of six full pages, but it is wholly

unclear which of these statements plaintiff is intending to argue should

have been discussed by the ALJ, or why specific discussion of those

statements was required or otherwise calls the ALJ's finding regarding

plaintiff's subjective reports into question.

In his decision, ALJ Eldred acknowledged that plaintiff testified that

his medications made him tired, groggy and irritable, and that he and his

girlfriend testified that he sleeps excessively, but noted that treatment

records from June 2019 – which was but a few months prior to the hearing

– documented that plaintiff reported that his medications had been working well with no adverse side effects reported, and that he was "sleeping well and offered no complaints."  AT 20.  The ALJ therefore was apparently well-aware of plaintiff's hearing testimony and did not fail to consider it.  He was not required to recount the testimony in detail in order to show that it was considered.  *See Brault*, 683 F.3d at 448 ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").  Because plaintiff has not elucidated what specific statements the ALJ allegedly failed to adequately discuss or consider or why that failure to discuss resulted in any error, his argument fails.

Finally, I find that the ALJ's assessment of plaintiff's subjective reports is supported by substantial evidence.  If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence.  *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed as set forth in Social Security Ruling ("SSR") 16-3p, which governs the evaluation

of a claimant's claimed symptomology, provided that it is clear from the

decision that the ALJ considered all of the evidence and that he or she

provided specific reasons for his or her determination as to the intensity,

persistence, and limiting effect of the claimant's symptoms.  *See Cichocki*

*v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss

certain factors did not require remand because the ALJ provided specific

reasons for his determination "and the record evidence permits us to glean

the rationale of the ALJ's decision").  Where the ALJ's findings are

supported by substantial evidence, the decision to discount subjective

testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of*

*Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In making his finding regarding plaintiff's subjective reports, the ALJ

explicitly found that plaintiff's reports of excessive sleep or fatigue due to

his medications – which makes up a large portion of his testimony

regarding why he is unable to function – were inconsistent with his reports

to his treatment providers or the objective medical evidence, and that the

objective medical evidence generally showed that plaintiff's mental status

improved and was stable when he adhered to his prescribed medication,

which is contrary to his reports of inability to function due to anxiety related

to being around people or stress.  Indeed, the medical evidence as

33

discussed by the ALJ generally does not contain even subjective reports to support plaintiff's testimony regarding anxiety and stress, let alone objective observations.  As a result, I find that the ALJ's finding regarding plaintiff's subjective reports is supported by substantial evidence and that plaintiff's argument on this issue must be rejected.

IV.    <u>SUMMARY AND ORDER</u>

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 16) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be DENIED, the Commissioner's decision be AFFIRMED, and plaintiff's complaint be DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:     March 1, 2022
           Syracuse, NY
                                                    DAVID E. PEEBLES
                                                    U.S. Magistrate Judge

34